IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **DESHAWN A. BUTCHER, MATEO BUTCHER** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 23-417-MAK** |
| | : | |
| **OFFICER SHAYNE LINKHORST, INDIVIDUALLY, OFFICER AVERY STEWART, INDIVIDUALLY, OFFICER MICHAEL CHAMBERS, INDIVIDUALLY, SERGEANT DENNIS M. LEAHY, INDIVIDUALLY, SERGEANT FREDERICK G. CHAITT, INDIVUDALLY** | : | |

# ORDER-MEMORANDUM

**AND NOW**, this 29th day of September 2023, upon considering Defendants' Motion to dismiss (D.I. 22) Plaintiff's amended Complaint (D.I. 13), extended oral argument consistent with our Policies under our August 16, 2023 Order (D.I. 12), and finding no basis today to dismiss constitutional claims premised on core fact disputes as to what happened in the encounter with the police officers based on qualified immunity, it is **ORDERED** Defendant's Motion to dismiss (D.I. 21) is **GRANTED in part** and **DENIED in part** requiring:

1. We dismiss Plaintiffs' malicious prosecution and negligent infliction of emotional distress claims without prejudice; and,

2. Defendants shall answer the remaining claims by no later than **October 13, 2023.**

*Analysis*

A. Alleged facts

DeShawn and Mateo Butcher attended their two-year-old granddaughter's birthday at a trampoline park with their daughter and their daughter's new boyfriend.[1] Their granddaughter's

father (their daughter's ex-boyfriend) arrived at the party and got into a fight with the Butchers' daughter's new boyfriend.[2] Someone called the police to break up the fight and a Delaware State Police officer arrived and took the Butchers' statements.[3]

The Butchers returned home to continue celebrating their two-year-old granddaughter's birthday.[4] Approximately thirty to forty of the ex-boyfriend's friends and family then showed up at the Butchers' home, began threatening the Butchers, and tried to forcibly enter the Butchers' home.[5]

Mrs. Butcher called the police but they did not arrive promptly.[6] Mrs. Butcher moved her grandchildren to the third floor to protect them from the crowd.[7] Members of the ex-boyfriend's crowd began attacking a family friend of the Butchers, attempted to remove the Butchers' front door from its hinges, and two members of the crowd brandished firearms.[8] Mrs. Butcher retrieved an unloaded firearm from her home to "deter" crowd members from entering her home.[9]

Officers Linkhorst and Stewart arrived at the Butchers' home during the fight.[10] The officers observed "approximately [ten]" crowd members on the Butchers' front step area and "approximately [twenty to thirty]" crowd members walking past the officers toward the Butchers' home.[11] Mrs. Butcher kept her unloaded firearm "by her side" for the fight's duration.[12] Officer Linkhorst ordered Mrs. Butcher to drop her firearm.[13] Mrs. Butcher dropped her firearm immediately.[14] Mrs. Butcher legally owns the firearm and did not point the gun at any of the crowd members.[15]

The officers handcuffed Mrs. Butcher tightly and placed her in the squad car.[16] One of the officers "manhandled" Mrs. Butcher and refused to loosen Mrs. Butcher's handcuffs despite her pleas.[17] Mrs. Butcher suffered injuries to her wrists and "other body parts" as well as

2

"emotional scars" related to the officers' treatment of her during the same encounter.[18] The officers arrested Mr. Butcher and transported the Butchers to the Wilmington police station.[19]

Officer Linkhorst searched the Butchers' home without a warrant and found Mrs. Butcher's firearm after the Butchers' arrest and transportation to the police station.[20] No residents of the Butchers' home "nor anyone with lawful standing" gave Officer Linkhorst their consent to search the Butchers' home.[21]

The Butchers remained in custody at the police station for processing and awaiting formal charges for several hours.[22] The officers did not interview the Butchers about the events involving the crowd.[23] The officers filed reports about the events without speaking with the Butchers.[24] Officer Linkhorst worked on and then submitted an affidavit of probable cause containing "errors, misinformation and half-truths" to obtain arrest warrants for the Butchers.[25]

The officers charged Mrs. Butcher with three crimes and Mr. Butcher with two crimes. Judge Manning dismissed two of Mrs. Butcher's charged crimes holding the officers lacked probable cause.[26] The state voluntarily dismissed Mrs. Butcher's third charged crime.[27] The prosecution dismissed one of Mr. Butcher's charged crimes and a jury found Mr. Butcher not guilty of the second charged crime.[28]

The Butchers sued the arresting officers and their supervisors alleging (1) unreasonable search of their home; (2) unreasonable seizure by falsely arresting the Butchers without a warrant; (3) false imprisonment; (4) malicious prosecution; and (5) negligent infliction of emotional distress. The officers move to dismiss.[29] We grant the officers' Motion in part and dismiss the Butchers' malicious prosecution and negligent infliction of emotional distress claims.

### B. The Butchers do not plead a basis for malicious prosecution.

The officers move to dismiss the malicious prosecution claim arguing, among other reasons, Mr. and Butcher do not plead facts allowing us to plausibly infer a legal basis for a malicious prosecution claim. Mr. and Mrs. Butcher counter Officer Linkhorst lacked probable cause to charge them with a crime but then "swore out and presented an affidavit of probable cause which was false and misleading and contained a myopic view of the true facts[.]"[30] The Butchers plead Officer Linkhorst's affidavit of probable cause is "fraught with errors, misinformation, and half-truths."[31] Officer Linkhorst responds a judge signed a validly issued warrant and the Butchers' amended Complaint "is devoid of allegations as to what specifically was 'false and misleading' in the affidavits of probable cause" as required by the Supreme Court in *Franks v. Delaware*.[32]

The Butchers, in advancing a malicious prosecution claim, must allege: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[33]

Persons challenging probable cause undergirding an arrest warrant must allege the police officer writing the affidavit of probable cause "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'"[34]

We are guided by three apt examples offering contrasts. We first examine Judge Shipp's dismissing a parent's malicious prosecution claim because the parent failed to plead facts

4

demonstrating the officer gave false statements to obtain the arrest warrant.[35] The parent in *Severino* filed 130 complaints against his daughter's mother and tried to have her criminally prosecuted.[36] A Middlesex County assistant prosecutor explained to the parent the prosecutor's office would not indict the parent's daughter's mother.[37] The parent sent an e-mail to the chief prosecutor expressing his anger over the failure to indict his daughter's mother.[38] The Sayreville police arrested the parent at his sister's house after conducting a welfare check.[39] The parent sued the Sayreville police arguing three detectives gave "false information to the municipal judge that [the parent] made terroristic threats to kill his daughter's mother" to obtain an arrest warrant for the parent.[40] Judge Shipp dismissed the parent's malicious prosecution claim because the parent failed to "identif[y] a single aspect of [the detectives'] statement that was false, beyond [the parent's] conclusory assertion."[41]

Judge Padin addressed an arrestee's similarly conclusory allegations about false statements used to obtain an arrest warrant.[42] The arrestee witnessed an altercation in 2014 involving gunfire and lost consciousness after being shot in the legs.[43] The police arrested him and held him in county jail after the arrestee's release from the hospital.[44] The arrestee alleged the detective falsely testified to the grand jury the surveillance video "clearly depicted [the arrestee] as one of the shooters, despite the allegedly 'poor quality' video."[45] The state prosecuted the arrestee for two years before later dismissing the indictment.[46] The arrestee sued the detective alleging a malicious prosecution claim and arguing the detective "knowingly and falsely claimed that said surveillance video depicted [the arrestee] as being involved in the February 9, 2014 gun fight."[47] Judge Padin dismissed the arrestee's claim and held the arrestee's allegations of falsity must include facts and not "just conclusory statements."[48]

Chief Judge Brann addressed a different scenario. He allowed a restaurant patron's malicious prosecution claim to proceed where the patron pleaded facts of the officer's false statements and misrepresentations used to obtain an arrest warrant.[49] The police arrested a restaurant patron for the patron's involvement in a fight with the restaurant owner.[50] The patron sued several police officers for malicious prosecution arguing the officers made false statements in the affidavit of probable cause.[51] The patron plead ten subparagraphs detailing the affidavit of probable cause's falsities and tying the falsities to video evidence of the fight.[52] Chief Judge Brann denied the police officer's motion to dismiss the malicious prosecution claim because the patron pleaded the "numerous falsehoods and/or omissions" which could undermine the probable cause necessary for the arrest warrant.[53]

The Butchers offer no specifics of alleged false statements contained in Officer Linkhorst's affidavit of probable cause like the complaints in *Severino* and *Guzman* reviewed by Judges Shipp and Padin. The Butchers challenge Officer Linkhorst's affidavit of probable cause as being "fraught with errors, misinformation, and half-truths" but do not tell us which statements in the affidavit are untrue and why they are untrue.[54] They instead want to argue the affidavit did not tell their side of the story. But we are not aware of, and the Butchers do not offer, authority requiring the officer to recite the defenses; the test is probable cause not guilt beyond a reasonable doubt necessary to convict. The Butchers' allegations fall well short of those Judge Brann allowed to proceed past the pleading stage in *Balon* which contained ten separate reasons refuting the truth of the police officer's affidavit of probable cause. The Butchers must allege more than their conclusory categorization of the affidavit as rife with false statements to defeat a motion to dismiss.

### C. The Butchers do not plead a negligent infliction of emotional distress claim.

The Butchers seek damages for negligent infliction of emotional distress. They allege "Mrs. Butcher sustained injuries to her wrists and other body parts as well which required counseling and therapy as a result of being handcuffed too tight and being pulled around in a rough manner by her handcuffed arms" as well as "emotional scars."[55] They did not allege physical harm to Mr. Butcher. The officers move to dismiss this state law claim arguing the Butchers fail to plead "(1) negligent conduct that proximately causes emotional distress; and (2) the emotional distress is accompanied by non-transitory, recurring physical phenomena."[56] We dismiss the Butchers' negligent infliction of emotional distress claim.

Delaware law requires persons seeking recovery under a negligent infliction of emotional distress claim to plead "(1) negligence causing fright to someone; (2) that the plaintiff was within the 'zone of danger'; and (3) that the plaintiff suffered physical harm as a result."[57] The "zone of danger" is the "area where the negligent conduct causes the victim to fear for his or her own safety."[58] The physical injury suffered must derive from their emotional distress.[59]

The officers direct us to the reasoning offered by Judge Terry in *Lupo* and Judge Robinson in *Greene* and urge we dismiss because Mrs. Butcher fails to allege physical injury deriving from her emotional distress.[60] Judge Terry in *Lupo* recognized a physical injury resulting from emotional distress where the mother suffered "clinically diagnosed depression, eating disorders and recurring severe headaches."[61] The mother claimed negligent infliction of emotional distress after doctors told the mother her unborn child had no chance of surviving a full term pregnancy.[62] The doctors induced labor and did not tell the mother her child lived for two hours after delivery.[63] Judge Terry found the mother suffered injury resulting from her emotional distress.[64] Judge Terry cited to the comments of Restatement (Second) of Torts §

7

436A noting "long continued nausea or headaches may amount to physical illness" sufficient to plead negligent infliction of emotional distress.[65] Judge Terry addressed a plaintiff experiencing physical harm from her emotional distress long after the event causing emotional distress. We are not facing those facts. Mrs. Butcher does not claim physical harm of the same intensity or inception. She instead alleges injuries arising from the handcuffing and arrests not from emotional distress.

Judge Robinson in *Greene* cited *Lupo* to dismiss a postal service customer's claim of negligent infliction of emotional distress after a post office clerk behaved rudely to the customer.[66] The clerk's behavior caused the customer to cry which in turn caused her to trip over a parking barrier and injure herself.[67] The customer's claimed injuries derive from her fall after interacting with the post office clerk.[68] Judge Robinson dismissed the negligent infliction of emotional distress claim because the plaintiff's injuries derived from her fall and not her emotional distress resulting from her interaction with the post office clerk.[69] We are not examining a later physical manifestation of emotional harm.

Judge Terry's and Judge Robinson's analyses are in accord with section 436A of the Restatement (Second) of Torts: "If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance."[70] The Restatement creates a threshold of physical injury resulting from emotional distress by noting "non-recurring . . . dizziness" is insufficient to plead negligent infliction of emotional distress but "long continued nausea or headaches" is sufficient.[71]

8

We are also guided by Judge Winston's analysis in dismissing a hospital patient's negligent infliction of emotional distress claim despite alleging "deep periods of [extreme] depression" suffered after the hospital's negligent conduct.[72] The patient suffered a stillborn pregnancy at Christiana Care Hospital.[73] The patient requested the hospital not perform an autopsy on the stillborn fetus.[74] The hospital performed the autopsy and the patient did not learn of the procedure for several months.[75] The patient alleged she suffered from "[deep periods of] extreme depression, sadness, [and] anger" resulting from the negligently performed autopsy.[76] Judge Winston dismissed the patient's negligent infliction of emotional distress claim despite finding she adequately pleaded physical injury.[77] Physical injury deriving from emotional distress is a necessary condition for pleading negligent infliction of emotional distress.

Mrs. Butcher does not plead the tort's necessary element she suffered physical injury resulting from her emotional distress. Mrs. Butcher's pleaded facts are like those Judge Robinson found wanting in *Greene*. Mrs. Butcher alleges the physical injury to her wrists occurring at the same time as the emotional harm and deriving from the arresting officer's physical conduct, like the post office customer in *Greene* whose pleaded injuries arose from falling outside of the post office. Mrs. Butcher's pleaded physical injuries derive from her placement in handcuffs, not from emotional distress suffered from being arrested. She does not plead she suffers from "recurring headaches" like the mother in *Lupo*. Mrs. Butcher must plead how her alleged "emotional scars" manifest physically to plead negligent infliction of emotional distress. She has not done so. And Mr. Butcher pleads no physical harm. We dismiss the Butchers' negligent infliction of emotional distress claim without prejudice.

9

### D. We do not apply qualified immunity at this preliminary stage given core fact disputes as to what happened between the officers and the Butchers.

The Butchers argue the police officers violated their Fourth Amendment rights by searching their house without a warrant, falsely arresting them without a warrant, and falsely imprisoning them until the officers issued formal charges.[78] The Officers move to dismiss arguing qualified immunity shields them from continuing as parties on these claims.[79]

Our Court of Appeals last month instructed we should carefully evaluate qualified immunity barring factually disputed constitutional claims.[80] Counsel acknowledged at oral argument the existence of fact disputes concerning the warrantless search of Mr. and Mrs. Butcher's house, warrantless seizure of Mr. and Mrs. Butcher through by way of their arrest without a warrant, and false imprisonment by holding Mr. and Mrs. Butcher in custody after their warrantless arrest and before the filing of formal charges. We cannot today dismiss the Butchers' factually disputed constitutional claims on qualified immunity grounds.

**KEARNEY, J.**

---

[1] D.I. 13 ¶ 12, 16.

[2] *Id.* ¶ 16.

[3] *Id.* ¶ 17.

[4] *Id.* ¶ 19.

[5] *Id.* ¶ 20.

[6] *Id.* ¶ 21.

[7] *Id.* ¶ 22.

[8] *Id.* ¶ 23.

---

[9] *Id.* ¶ 26.

[10] *Id.* ¶ 25.

[11] *Id.*

[12] *Id.* ¶ 27.

[13] *Id.* ¶ 28.

[14] *Id.*

[15] *Id.* ¶¶ 26 n.8, 27.

[16] *Id.* ¶ 28.

[17] *Id.* ¶ 30.

[18] *Id.*

[19] *Id.* ¶ 33.

[20] *Id.* ¶ 33-34.

[21] *Id.* ¶ 37.

[22] *Id.* ¶¶ 45, 56. The Butchers do not plead time in custody other than before the warrant.

[23] *Id.* ¶ 45.

[24] *Id.* ¶ 47.

[25] *Id.* ¶ 48.

[26] *Id.* ¶ 62.

[27] *Id.* ¶ 63.

[28] *Id.* ¶ 64-65.

[29] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also*

*Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[30] D.I. 13 ¶¶ 93, 94.

[31] *Id.* ¶ 48.

[32] D.I. 22 at 22 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).

[33] *Wiggins v. McAndrew,* No. 17-1410, 2018 WL 3727389 (M.D. Pa. Aug. 6, 2018) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

[34] *Campbell v. Balon*, No. 16-779, 2017 WL 2880856, at *6 (M.D. Pa. July 6, 2017) (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)).

[35] *Severino v. Middlesex Cnty. Prosecutor's Off.*, No. 19-19164, 2022 WL 1269698 (D.N.J. Apr. 28, 2022), appeal dismissed sub nom., *Severino v. Middlesex Cnty. Prosecutors Off.*, No. 22-1944, 2022 WL 19914518 (3d Cir. Dec. 29, 2022).

[36] *Id.* at *1.

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* at *3.

[42] *Guzman v. City of Newark*, No. 20-6276, 2023 WL 373025 (D.N.J. Jan. 23, 2023)

[43] *Id.* at *1.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.* at *7.

[48] *Id.*

[49] *Campbell v. Balon*, No. 16-779, 2017 WL 2880856 (M.D. Pa. July 6, 2017).

[50] *Id.* at *2-3.

[51] *Id.* at *6.

[52] ECF No. 26 ¶¶ 63a-63j, *Campbell v. Balon*, No. 16-779 (M.D. Pa. Aug. 2, 2016).

[53] *Balon*, 2017 WL 2880856 at *6.

[54] D.I. 13 ¶ 48.

[55] D.I. 13 ¶ 30.

[56] D.I. 22 at 19 (citing *Greene v. U.S. Postal Service*, 462 F.Supp.2d 578, 580 (D. Del. Nov. 17, 2006); *Lupo v. Medical Ctr. of Del., Inc.*, No. 94–09–049, 1996 WL 111132 at *3 (Del.Super. Feb. 7, 1996)).

[57] *Spence v. Cherian*, 135 A.3d 1282, 1290-1291 (Del. Super. 2016).

[58] *Boas v. Christiana Care Health Servs., Inc.*, No. 22-08-066, 2023 WL 4842102, at *3 (Del. Super. Ct. July 26, 2023).

[59] *Fanean v. Rite Aid Corp. of Delaware*, 984 A.2d 812, 820 (Del. Super. Ct. 2009) (recognizing anxiety and depression as physical injuries and denying motion to dismiss).

[60] D.I. 22 at 24.

[61] *Lupo*, 1996 WL 111132 at *3.

[62] *Id* at *1.

[63] *Id*.

[64] *Id* at *3.

[65] *Id*.

[66] *Greene v. U.S. Postal Service*, 462 F.Supp.2d 578, 580 (D. Del. Nov. 17, 2006).

[67] *Id* at 579.

[68] *Id* at 581.

[69] *Id*.

[70] RESTATEMENT (SECOND) OF TORTS § 436A (AM. LAW. INST. 1965).

[71] RESTATEMENT (SECOND) OF TORTS § 436A cmt. c (AM. LAW INST. 1965).

[72] *Boas v. Christiana Care Health Servs., Inc.*, No. 22-08-66, 2023 WL 4842102, at *1 (Del. Super. Ct. July 26, 2023).

[73] *Id*.

[74] *Id*.

[75] *Id*.

[76] *Id*.

[77] *Id.* at *4.

[78] D.I. 13 ¶¶ 68-90.

[79] D.I. 22 at 10-18.

---

[80] *Rush v. City of Philadelphia*, 78 4.th 610, 615 (3d Cir. 2023) ("As the Supreme Court has explained, this is because the first prong of the qualified immunity analysis—determining whether the conduct at issue violated the Constitution—depends on contested material facts, its resolution will be functionally inseparable from the merits of the case.").